UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | : CRIMINAL NO. 3:03CR3(EBB) |
| | : |
| ANTHONY D. AUTORINO | : March 4, 2005 |

**UNITED STATES' IN CAMERA MOTION
REQUESTING HEARING REGARDING CONFLICT OF INTEREST**

I.   INTRODUCTION

The Second Circuit has recognized that "scarce judicial resources are wasted" when possible conflicts are not addressed as early as possible. The Second Circuit has admonished the Government to bring potential conflicts to the attention of the trial judge. See United States v. Stantini, 85 F.3d 9, 13 (2d Cir. 1996); United States v. Malpiedi, 62 F.3d 465, 467 (2d Cir. 1995). Pursuant to these clear instructions by the Second Circuit, the United States files this motion to inform the Court of a possible conflict of interest caused by the representation of defendant Anthony D. Autorino by Attorney John B. Nolan and the Law Firm of Day, Berry and Howard. The Government respectfully requests that the Court conduct a hearing to advise the defendant of the potential conflict and to determine whether the conflict is waivable and, if it is waivable, whether defendant Autorino intends to waive any such conflict. In addition, the United States requests that the defendant be canvassed regarding the conflict of interest. Prior to any hearing on these conflicts the Government will submit a proposed canvass for the Court's consideration.

II.   STATEMENT OF FACTS

On January 8, 2003, a federal grand jury in Connecticut returned a seven count indictment

against the defendant charging him with multiple acts of fraud arising from his participation in two financial transactions. In essence, the indictment alleges that the defendant defrauded the Federal Deposit Insurance Corporation ("FDIC") in connection with his pledge of shares of Shared Technologies, Inc. ("STI") stock that he owned as collateral for debts that he personally owed to the FDIC. In the first instance (Count One through Five), the defendant executed a promissory note for $675,000, which he secured by pledging and delivering a stock certificate (#1315) as collateral. According to the allegations in the indictment, unbeknowst to the FDIC, less than one year after pledging the certificate, the defendant falsely reported to the stock transfer agent that he had lost the certificate and that it had not been pledged to any party. As a result, the certificate was cancelled and the defendant received a replacement certificate which he then used to his own benefit. When the underlying note became due, the defendant refused to pay. Only when the FDIC attempted to redeem the certificate did it learn from the stock transfer agent that the defendant had cancelled it in July 1993 and had later sold the stock to an unknowing third party.

In the second instance (Counts Six and Seven), the defendant pledged a separate stock certificate (#0959) to the FDIC to secure a $500,000 note that he executed in its favor. Unbeknowst to the FDIC, the defendant previously reported that certificate as lost also, and had already received a replacement certificate which he used for his own benefit. As with #1315, the FDIC discovered that #0959 had been canceled only after the defendant defaulted on the underlying note.

On February 27, 2003, the defendant filed a motion to dismiss the indictment, arguing among other grounds, that the indictment failed to allege a criminal fraud because of the potential remedy afforded to the FDIC as a bonafide purchaser under the Uniform Commercial Code ("UCC"). On May 7, 2003, this Court granted the defendant's motion to dismiss the indictment. On August 19,

2004, the Second Circuit reversed that dismissal, holding that the indictment adequately charged each of the pleaded charged offenses. "Even assuming that the UCC provided the FDIC with remedies that might have given it certain protections against aspects of the alleged fraud, the indictment nonetheless alleges a scheme to defraud the FDIC and the making of a material false statement to it for the purpose of influencing its actions." United States v. Autorino, 381 F.3d 48, 51 (2d Cir. 2004).

Defendant, through counsel, has indicated his intention to continue to pursue the defense alleged in the motion to dismiss, namely that no harm was incurred by the FDIC because remedies were available to it under Section 8-405 of the UCC and that, therefore, the certificates were not valueless as alleged in the indictment. The defendant continues to maintain that had the FDIC presented the canceled stock certificates which had been replaced upon the filing of a lost stock affidavit by Mr. Autorino, that the issuer would have been required to redeem the shares. The defendant will apparently argue at trial, as he did in his motion to dismiss that

> between March 1998 (before it started its suit against Mr. Autorino) and the date it sold its claims to Republic, had the FDIC had [sic] delivered the certificates to STF for $15 per share, STF would have been obligated to pay the FDIC because of the FDIC's status as a (then) "protected purchaser." Thus, neither certificate #0959 nor certificate #1315 were rendered "valueless" by the filing of the lost certificate agreement. In fact, they retained their full value - - which exceeded the amounts claimed by the FDIC in its suits against Mr. Autorino.

Memorandum of Law in Support of Defendant Anthony Autorino's Motion to Dismiss at 16.

The defense advanced by defendant, however, was rejected by the Second Circuit:[1]

---

[1] The Government intends, and has advised the defendant, that it will file a motion in limine to prevent any questioning or evidence into remedies available to the FDIC after discovering the cancellation of the certificate. If the Court were to grant that motion in limine,

> Furthermore, [the scheme] would harm the FDIC by rendering useless the certificate it held as security unless and until the FDIC took legal steps, involving the remedies of the UCC, to restore the certificates' validity. . . . The cancellation of the FDIC's certificate by the issuer's transfer agent would render it valueless until the FDIC engaged lawyers and took the necessary steps to invoke the UCC remedy to restore recognition of the canceled certificate. Depending upon the value of the STI shares at the time the FDIC discovered the perpetration of the fraud, it was conceivable that the FDIC would find that the value of the pledged but compromised security would not justify the expense of taking the legal steps necessary to the restoration of the canceled certificate.

Autorino, 318 F.3d 48, 53.

If the defendant Autorino were permitted to question witnesses in regard to available remedies and present evidence in regard thereto, the Government would establish what the Second Circuit contemplated;" that the value of the pledged but compromised security would not justify the expense of taking the legal steps necessary to the restoration of the canceled stock certificate." Id. at 53. In regard to that evidence, a crucial piece of evidence will be a letter dated June 17, 1999 from John B. Nolan, counsel for defendant Autorino, to Roger Bernhammer, at the Continental Stock Transfer and Trust Company ("Continental"), who was the entity tasked with redeeming outstanding shares of STI stock, pursuant to a merger with Intermedia Communications, Inc. Exhibit A attached

---

the potential conflict of interest as it pertains to this argument, would not be present. The defendant, through counsel, has also indicted that he will present evidence in regard to the actions by outside counsel for the FDIC in regard to the Autorino matter at times when he was represented by Attorney Nolan and Day, Berry and Howard. This too will be subject to a motion in limine on relevance grounds. However, if the Court would permit such questioning, Attorney Nolan and Day, Berry and Howard may well be sworn and/or unsworn witnesses for this reason, as well, as Attorney Nolan was acting on behalf of Mr. Autorino and interacting with the FDIC and its outside counsel.

hereto.[2] The evidence will show that the FDIC reached out to Continental in or about June of 1999, in order to obtain information to redeem its shares, and learned that stock certificates #1315 and #0959 had been canceled. In response to that discovery, counsel for the FDIC sent a letter to Continental confirming the cancellation of the FDIC certificates and seeking documents pertaining to the cancellation of the certificates. Exhibit B attached hereto. In response to that request, Attorney Nolan, of Day, Berry and Howard, sent the letter to Roger Bernhammer objecting to the release to the attorney for the FDIC or anyone else, of information requested by the FDIC attorney or any other information relating in any way to any of the allegations made in the pending law suit "without the knowledge and express prior written consent of Mr. Autorino." See Exhibit A. Clearly, this letter is highly probative of the effort and expense that the FDIC would have to incur in order to collect on the canceled stock certificates. As such, it is a crucial piece of evidence that must be presented by the Government if the defendant were permitted to pursue questioning and present evidence in regard to remedies available to the FDIC as a holder of the canceled certificates. The proposed defense and this correspondence gives rise to an actual conflict of interest between the defendant and Attorney Nolan, as Attorney Nolan may become a sworn or unsworn witness. This raises the possibility that the defendant Autorino could be unfairly prejudiced, that the Government could be unfairly disadvantaged, and that the fact-finding process at trial could be impaired.

---

[2] Within the last week, the Government, in reviewing the evidence with an eye toward any defense, first recognized the potential conflict of interest.

III.  ARGUMENT

    A.  Legal Framework

        1.  The Defendant's Right to Conflict-Free Counsel

It is well established that "a criminal defendant has an absolute right under the Sixth Amendment to be represented by an attorney who has no conflict of interest." United States v. Curcio, 680 F.2d 881, 885 (2d Cir. 1982).[3]  Moreover, apart from the individual right of the defendant, the "[f]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." Wheat v. United States, 486 U.S. 153, 160 (1988).

        2.  The District Court's Duty of Inquiry and to Determine Whether Conflicts Are Waivable

The Second Circuit has comprehensively set forth "two distinct obligations" of a trial court in conflict-of-interest situations.  See United States v. Rogers, 209 F.3d 139, 143 (2d Cir. 2000); United States v. Levy, 25 F.3d 146, 156 (2d Cir. 1994).  First, when the Court "is sufficiently apprised of even the possibility of a conflict of interest," the court has an "inquiry" obligation: to "investigate the facts and details of the attorney's interest to determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict." Levy, 25 F.3d at 153. "'When a possible conflict has been entirely ignored, reversal is automatic.'" Rogers, 209 F.3d at 143-44 (quoting Levy, 25 F.3d at 153-54).

---

[3]The Connecticut Rules of Professional Conduct, as incorporated by the local rules of this Court, set forth the general rule that a lawyer–subject to certain limited exceptions–"shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests."  Conn. Rules of Prof. Conduct 1.7(b).

Second, if it is ascertained that an actual or possible conflict exists, the Court then has a "disqualification/waiver" obligation: to determine whether to require disqualification or whether the conflict may be validly waived by the defendant. Levy, 25 F.3d at 153. The Second Circuit "applies a firm preference for prophylactic inquiry, in which any conflict is identified and either eliminated or knowingly and voluntarily waived pre-trial." Rogers, 209 F.3d at 146.

The Court has "broad latitude" to decide whether to require disqualification. United States ex rel. Stewart v. Kelly, 870 F.2d 854, 856 (2d Cir. 1989). So long as an actual or potential conflict "may result in inadequate representation of a defendant or jeopardize the federal court's institutional interest in the rendition of a just verdict, a trial judge has discretion to disqualify an attorney or decline a proffer of waiver." United States v. Fulton, 5 F.3d 605, 612 (2d Cir. 1993). Indeed, "where a court justifiably finds an actual conflict of interest, there can be no doubt that it may decline a proffer of waiver, and insist that defendants be [represented by conflict-free counsel]." Wheat, 486 U.S. at 162-63. However, the Second Circuit has made clear that "[i]n most cases, when a defendant is faced with a situation in which his attorney has an actual or potential conflict of interest, it is possible for him to waive his right to conflict-free counsel in order to retain the attorney of his choice." United States v. Schwarz, 282 F.3d 76, 95 (2d Cir. 2002).

       3.    Waiver Procedures

If the Court declines to require disqualification of defense counsel, the Court should ascertain on the record whether the defendant can knowingly and intelligently waive the conflict of interest. Levy, 25 F.3d at 153. A defendant's waiver is knowing and intelligent when a defendant shows that he understands the various risks and pitfalls, that he has the rational ability to make a decision on the basis of this information, and that he unequivocally and clearly expresses his choice to be

represented by particular counsel notwithstanding the potential disadvantages. See Williams v. Meachum, 948 F.2d 863, 866 (2d Cir. 1991); Curcio, 680 F.2d at 888. On the other hand, "even a defendant's explicit, in-court waiver of his right to a non-conflicted lawyer [is] not valid and effective" if a court "fail[s] to explain adequately the ramifications of the attorney's conflicts" and to "provide the defendant with time to reflect on his decision" to continue with a conflicted counsel. Levy, 25 F.3d at 158.

The Court itself plays the "central role in apprising a defendant of his lawyer's conflicts in order to obtain an effective waiver." Id. at 158. It is not enough to rely solely on the parties' out-of-court certifications of waiver or the assurances of defense counsel that he or she has advised the client of possible conflicts. To the contrary, "[t]he first task of the trial court is to alert the defendants to the substance of the dangers of representation by an attorney having divided loyalties in as much detail as the court's experience and its knowledge of the case will permit." Curcio, 680 F.2d at 888. A trial court is thus "obligated at the very least to engage [the defendant] personally in a colloquy to determine if [the defendant is] willing to waive [the] right to a conflict-free lawyer." Levy, 25 F.3d at 155. In particular, the court should:

> (i) advise the defendant of the dangers arising from the particular conflict; (ii) determine through questions that are likely to be answered in narrative form whether the defendant understands those risks and freely chooses to run them; and (iii) give the defendant time to digest and contemplate the risks after encouraging him or her to seek advice from independent counsel.

Id. at 153 n.4 (internal quotations omitted); see also United States v. Rodriguez, 968 F.2d 130, 138 (2d Cir. 1992) (identifying similar procedures to be followed).

B. <u>Nature and Waivability of the Conflict of Interest in this Case</u>

In light of the anticipated questioning and argument by the defendant about available

remedies to the FDIC, the Government will be required to present testimony and ask questions in regard to the effort and expense to be incurred, and the probability of success in regard to collecting on any other remedies. Attorney Nolan and Day, Berry and Howard will function in a representational capacity as unsworn witnesses, in that Attorney Nolan's name, as well as the name of Day, Berry and Howard, appears on correspondence that is probative of the expense and effort that would be required in order to pursue that potential remedy. Second, while the Government does not contemplate calling Attorney Nolan as a witness, the defendant may wish to do so to testify in connection with his intent and purpose in sending the letter to the stock transfer agent.

Connecticut Rule of Professional Conduct Rule 3.7 provides: (a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where: (1) the testimony relates to an uncontested issue; (2) the testimony relates to the nature and value of legal services rendered in the case; or (3) disqualification of the lawyer would work a substantial hardship on the client. (b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9. Here, if he remains in the case, Attorney Nolan may suggest, through cross-examination of witnesses or otherwise, various explanations for the letter or some particular purpose behind the letter other than that proffered by the Government. When a defense attorney is an unsworn witness, not only is the "fact-finding process . . . impaired but also [a defense attorney's] role as advocate may give his client an unfair advantage, because the attorney can subtly impart to the jury his first-hand knowledge of the events without having to swear an oath or be subject to cross-examination." United States v. Locascio, 6 F.3d 924, 933-34; see also United States v. Kliti, 156 F.3d 150 (2d Cir. 1998) (when faced with an attorney as a sworn or unsworn witness, the proper recourse is to disqualify the

9

attorney).

IV.  CONCLUSION

Based on the foregoing, the Court should initially determine if Attorney Nolan is to be a sworn or unsworn witness at trial. If he is to be either a sworn or unsworn witness, Attorney Nolan has an actual conflict of interest and the Court finds that he is to be a sworn or unsworn witness, the Court must determine whether to disqualify him or arrange some other acceptable remedy.

For these reasons, the United States respectfully requests that the Court conduct an inquiry into the existence of a conflict between the defendant Autorino and Attorney Nolan and Day, Berry and Howard to determine whether the defendant may, and if so, intends to, knowingly, intelligently waive any such conflict. In addition, the United States requests that the Court canvass the defendant regarding the conflict of interest.

        Respectfully submitted,

        JOHN H. DURHAM
        DEPUTY UNITED STATES ATTORNEY

By: _____
     EDWARD CHANG
     ASSISTANT UNITED STATES ATTORNEY
     FEDERAL BAR NO. ct26472

For: THOMAS V. DAILY
     ASSISTANT UNITED STATES ATTORNEY
     FEDERAL BAR NO. ct03467
     450 Main Street, Room 328
     Hartford, CT 06103
     (860) 947-1101

**CERTIFICATION OF SERVICE**

  I hereby certify that a copy of the above and foregoing has been telefaxed and mailed, postage prepaid, on this 4th day of March, 2005 to:

Stanley A. Twardy Jr., Esq.  (facsimile 203-977-7301)
Day, Berry & Howard, LLP
One Canterbury Green
Stamford, CT 06901

        By: _____
           EDWARD CHANG
           ASSISTANT UNITED STATES ATTORNEY
           FEDERAL BAR NO. ct26472

        For: THOMAS V. DAILY
          ASSISTANT UNITED STATES ATTORNEY
          FEDERAL BAR NO. ct03467
          450 Main Street, Room 328
          Hartford, CT 06103
          (860) 947-1101