UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | : CRIMINAL NO. 3:03CR3(EBB) |
| | : |
| ANTHONY D. AUTORINO | : March 11, 2005 |

**UNITED STATES' MOTION <u>IN LIMINE</u> TO EXCLUDE EVIDENCE REGARDING BOTH POTENTIAL REMEDIES AVAILABLE TO THE FDIC AS HOLDER OF CANCELLED STOCK CERTIFICATES AND ALLEGED MISCONDUCT BY OUTSIDE COUNSEL IN HANDLING CIVIL LITIGATION AGAINST DEFENDANT**

I.  INTRODUCTION

The defendant, through counsel, has indicated to the Government, and has restated at a recent hearing, that he intends to question witnesses in regard to other remedies available to the Federal Deposit Insurance Corporation ("FDIC") as a holder of a stock certificate pledged as collateral, but cancelled and replaced by the defendant. Further, defendant has indicated that he intends to question witnesses in regard to alleged misconduct by outside counsel in handling civil litigation against the defendant. The alleged misconduct includes actions by counsel when he represented the FDIC's successor-in-interest, Republic Credit Corp. The proposed examinations and any related evidence, are not relevant to the charges pending against the defendant, and should be precluded.[1]

---

[1] The Government acknowledges that questions of relevance are often better considered in the context of trial. However, because the proposed defenses directly bear open potential conflicts of interest, in that defense counsel may become a sworn or unsworn witness if the defenses are pursued (See United States' In Camera Motion Requesting Hearing Regarding Conflict of Interest, hereinafter "Conflict Motion"), the Government has deemed it advisable to raise these issues in advance of trial.

Therefore, the Government hereby moves to exclude any direct testimony or cross-examination of Government witnesses which addresses the following areas:

1. Potential remedies available to the FDIC as a holder of the cancelled certificates; and

2. Alleged misconduct by outside counsel representing the FDIC and then later the FDIC's successor.

II. FACTUAL BACKGOUND

On January 8, 2003, a federal grand jury in Connecticut returned a seven count indictment against the defendant charging him with multiple acts of fraud arising from his participation in two financial transactions. In essence, the indictment alleges that the defendant defrauded the FDIC in connection with his pledge of shares of Shared Technologies, Inc. ("STI") stock that he owned as collateral for debts that he personally owed to the FDIC. In the first instance (Counts One through Five), on or about September 25, 1992, the defendant executed a promissory note for $675,000, which he secured by pledging and delivering a stock certificate (#1315) as collateral. According to the allegations in the indictment, unbeknowst to the FDIC, less than one year after pledging the certificate, the defendant falsely reported in July of 1993 to the stock transfer agent that he had lost the certificate and that it had not been pledged to any party. As a result, the certificate was cancelled and the defendant received a replacement certificate which he then used to his own benefit. When the underlying note became due, the defendant refused to pay. Only when the FDIC attempted to redeem the certificate did it learn from the stock transfer agent that the defendant had cancelled it in July 1993 and had later sold the stock to an unknowing third party.

Counts One through Three charge wire fraud, 18 U.S.C. § 1343, each alleging a separate wire communication in furtherance of the defendant's overall scheme to defraud the FDIC of its rights to

certificate #1315. Count Four charges bank fraud, 18 U.S.C. § 1344, alleging that the defendant defrauded the FDIC as it acted in the capacity of receiver for Central Bank, a federally-insured financial institution. Count Five charges misleading the FDIC, 18 U.S.C. § 1007, on those same facts.

In the second instance (Counts Six and Seven), on or about July 17, 1996, the defendant pledged a separate stock certificate (#0959) to the FDIC to secure a $500,000 note that he executed in its favor. Unbeknowst to the FDIC, the defendant previously reported that certificate as lost also, and had already received a replacement certificate which he used for his own benefit. As with #1315, the FDIC discovered that #0959 had been canceled only after the defendant defaulted on the underlying note.

Count Six charges a separate violation of 18 U.S.C. § 1007 for the defendant's misleading the FDIC in relation to certificate #0959. Count Seven charges him with making a false statement to a financial institution, 18 U.S.C. § 1014, because the FDIC was acting as a receiver for both Sentinel Bank and the Bank of New England at the time that he pledged the previously cancelled and replaced certificate.

On February 27, 2003, the defendant filed a motion to dismiss the indictment, arguing among other grounds, that the indictment failed to allege a criminal fraud because of the potential remedy afforded to the FDIC as a bonafide purchaser under the Uniform Commercial Code ("UCC"). On May 7, 2003, this Court granted the defendant's motion to dismiss the indictment. On August 19, 2004, the Second Circuit reversed that dismissal, holding that the indictment adequately charged each of the pleaded charged offenses. "Even assuming that the UCC provided the FDIC with remedies that might have given it certain protections against aspects of the alleged fraud, the

indictment nonetheless alleges a scheme to defraud the FDIC and the making of a material false statement to it for the purpose of influencing its actions." United States v. Autorino, 381 F.3d 48, 51 (2d Cir. 2004).

On March 4, 2005, the United States filed a motion requesting a hearing regarding conflict of interest, advising the Court of a potential conflict of interest if the defendant were permitted to pursue the two defenses noted above and the subject of this motion, namely: (1) that other remedies were available to the FDIC as a holder of a cancelled certificate under the Uniform Commercial Code, and (2) that outside counsel for the FDIC and its successor engaged in misconduct in the handling of the civil litigation. See Conflict Motion. At a hearing on that motion conducted on March 7, 2005, the Court directed the Government to file any motion in limine referenced in the Conflict Motion by March 11, 2005.

III.    ARGUMENT

"[T]he proponent of any evidence . . . must establish a proper foundation for the evidence before a court may admit it." United States v. Garcia, 291 F.3d 127, 140 (2d Cir. 2002). "The requirement that a proper foundation be laid for the admission of evidence serves th[e] purpose [of preventing the confusion of issues], and is well established." Lurie v. Wittner, 228 F.3d 113, 134 (2d Cir. 2000). "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Said another way, "[e]vidence is relevant if it has a tendency to make the existence of a material fact more probable or less probable than it would be without the evidence." United States v. Ortiz-Rengifo, 832 F.2d 722, 725 (2d Cir. 1987). "Evidence which is not relevant is not admissible." Fed. R. Evid. 402. Even evidence that is

4

marginally relevant may be excluded where it would tend to confuse or distract the jury. See Fed. R. Evid. 403. "[J]udges are accorded 'wide latitude' in excluding evidence that poses an undue risk of 'harassment, prejudice [or] confusion of issues' or evidence that is 'repetitive or only marginally relevant.'" United States v. Blum, 62 F.3d 63, 67 (2d Cir. 1995); see also United States v. Holmes, 44 F.3d 1150, 1157 (2d Cir.1995).

      A.      Potential Remedies Available to the FDIC as Holder of a Cancelled Stock Certificate

Any witness examination or argument that other remedies were available to the FDIC even after cancellation of the stock certificates #1315 and #0959 held as collateral for loans would be irrelevant to the charges that are the subject of the indictment supports such a finding.[2] The Second Circuit's opinion reinstating the indictment alone supports that finding. United States v. Autorino, 381 F.3d 48 (2d Cir. 2004). The Court articulated and analyzed all of the elements of all of the charges contained in the indictment and held that the indictment adequately charged each of the pleaded charged offenses. "Even assuming that the UCC provided the FDIC with remedies that might have given it certain protections against aspects of the alleged fraud, the indictment nonetheless alleges a scheme to defraud the FDIC and the making of a materially false statement to it for purpose of influencing its actions." Id. at 51. The question of whether the FDIC was protected against loss by provisions of the UCC was not relevant to whether each of the charges were properly

---

[2] Based upon discussions with defense counsel and review of witnesses identified in defendant's proposed voir dire, it appears the defendant will raise these arguments only through cross-examinations of witnesses. That is, the defendant does not appear to identify any defense witnesses who will testify as to the application of the UCC to a bonafide purchaser of a cancelled certificate, as the defendant argued in his motion to dismiss, nor has he identified any testimony that such witness would give. The Government reserves its right to make further arguments at trial in regard to the manner in which the defendant attempts to elicit such testimony or to advance his argument.

pleaded. The FDIC's actual loss, or any potential remedy, is not relevant to the charges.

The defense advanced by defendant, that the plot alleged by the Government cannot be deemed a scheme to defraud the FDIC because the FDIC, as a bonafide purchaser, was protected against loss by the remedy available under UCC Section 8408-405(3), was flatly rejected by the Second Circuit:

> Furthermore, [the scheme] would harm the FDIC by rendering useless the certificate it held as security unless and until the FDIC took legal steps, involving the remedies of the UCC, to restore the certificates' validity. . . . The cancellation of the FDIC's certificate by the issuer's transfer agent would render it valueless until the FDIC engaged lawyers and took the necessary steps to invoke the UCC remedy to restore recognition of the canceled certificate. Depending upon the value of the STI shares at the time the FDIC discovered the perpetration of the fraud, it was conceivable that the FDIC would find that the value of the pledged but compromised security would not justify the expense of taking the legal steps necessary to the restoration of the canceled certificate.

Autorino, 318 F.3d 48, 53.

Consistent with the Court's ruling, the Government will present evidence that the FDIC was advised by representatives of the stock transfer agent, Continental Stock Transfer and Trust Company ("Continental"), the entity tasked with redeeming outstanding shares of STI stock after a merger with Intermedia Communications, that the stock certificates held by the FDIC had been cancelled and had been rendered valueless. Arguments as to what could have been done with the cancelled certificates, under the UCC or otherwise, is simply irrelevant to the elements of the offenses charged against the defendant.[3]

---

[3] As was raised in the United States' Conflict Motion, if the defendant were permitted to examine witnesses and present evidence in regard to remedies available to the FDIC as the holder of a cancelled certificate, counsel for the defendant may have a conflict of interest as a sworn or unsworn witness, as the Government would offer as evidence of the effort and expense to collect

B.  Evidence Regarding Alleged Misconduct by Outside Counsel for the FDIC and the FDIC's Successor In Interest

Counsel for the defendant has indicated that the defendant will present testimony in regard to alleged misconduct by Durwin Jones, outside counsel who represented the FDIC until on or about September of 1999, and then later represented the FDIC's successor in interest, Republic Credit, who purchased in September of 1999, as part of a pool of assets, the notes for which the cancelled stock certificates were held as collateral. Through conversations with counsel and a review of potential witnesses and defendant's voir dire, the defense apparently will include "conduct" of outside counsel long after he no longer represented the FDIC.[4]

The defendant has proffered no basis for which the misconduct by outside counsel would be relevant to the charges pending against defendant Autorino. Even focusing on the period of time that outside counsel, Durwin Jones, represented the FDIC, that is, until August of 1999, actions by outside counsel in civil litigation, long after commission of the crime, are in no way relevant to the elements of that crime.

The claim appears to be that outside counsel did not act in good faith in dealing with the defendant in the civil litigation. Again, such conduct is not relevant to the allegations as it pertains

---

on the cancelled certificates, a letter from defense counsel to Continental directing Continental not to cooperate with the FDIC without the express written consent of defendant Autorino. See Conflict Motion.

[4] At the March 7, 2005 hearing, counsel for the defendant argued that the Government counsel was aware of the proffered defense of misconduct by Mr. Jones because of references to it in various letters between counsel for the defendant and counsel for the Government prior to indictment. References made in one such letter refer to civil litigation between the defendant and Republic, alone, and not the FDIC. Allegations contained in that lawsuit, based upon documents the defendant provided to the Government are limited to Republic Credit alone, and relate to events long after the notes were sold to Republic. Based upon the Government's review, they do not relate to actions by the FDIC at all.

to the crime, the scheme to defraud and misrepresentations to the FDIC, that are alleged in the indictment. If the defendant is attempting to impute to the Government in investigating the criminal matter the alleged misconduct, he has failed to establish that connection, and even if he could, such evidence would not be relevant to the criminal charges nor a permissible defense. In response to efforts to interject themes of "Government misconduct" into a defense strategy, courts routinely have granted motions in limine "to bar defendants from presenting evidence or making arguments to the jury suggesting that they should be acquitted because the Government engaged in misconduct in the course of its investigation." United States v. Shields, 1991 WL 236492, *3 (N.D. Ill. 1991); United States v. Finley, 780 F. Supp. 906, 913-914 (N.D. Ill. 1989) (granting motion in limine to preclude evidence "which is not relevant to defendant's guilt but is designed only to persuade the jury that defendant should be acquitted because the Government engaged in misconduct during its investigation."). Permitting testimony into the actions of outside counsel for the FDIC is simply not relevant to the criminal charges pending against the defendant and would detract the jury's attention away from the subject of this criminal litigation toward irrelevant matters.[5]

Moreover, as is noted above, it would appear that the conduct of outside counsel complained of by the defendant is in large part conduct that occurred not while representing the FDIC but rather its successor in interest, Republic Credit.[6] The litigation referenced in correspondence by defendant's

---

[5] As is argued in the United States' conflict Motion, if the defendant were permitted to pursue a defense pertaining to outside counsel's conduct, defendant's counsel may have a conflict of interest as a sworn or unsworn witness because the actions of outside counsel could not be considered without reference to actions of defendant's criminal counsel, who also represented the defendant Autorino in the civil litigation.

[6] The scope and timing of the alleged misconduct of outside counsel to be proffered as a defense only recently become apparent to the Government. Defendant's proposed voir dire lists as a potential witness Bradley Wolfe, a law partner of Durwin Jones at the firm of Gordon, Muir

8

counsel and correspondence with the Government pertains to actions taken by counsel while representing Republic, not the FDIC. For this reason as well, questioning and evidence pertaining to that conduct is irrelevant and would confuse the jury, and detract its attention from the subject matter of the criminal investigation. For this reason as well, questioning and evidence pertaining to outside counsel's conduct should not be permitted.

IV.   CONCLUSION

For the reasons stated above, the United States moves in limine to exclude examination or direct evidence during the defendant's case regarding other potential remedies available to the FDIC as holder of cancelled stock certificates and relating to alleged misconduct by outside counsel for the FDIC and its successor in interest.

Respectfully submitted,

JOHN H. DURHAM
DEPUTY UNITED STATES ATTORNEY

By: _____
DAVID J. SHELDON
ASSISTANT UNITED STATES ATTORNEY
FEDERAL BAR NO. ct07997

For: THOMAS V. DAILY
ASSISTANT UNITED STATES ATTORNEY
FEDERAL BAR NO. ct03467
450 Main Street, Room 328
Hartford, CT 06103
(860) 947-1101

---

and Foley. Mr. Wolfe, and his firm, to the Government's knowledge, only became involved in the civil litigation when he filed an appearance for Republic Credit in December of 1999, after the subject loans had been sold to Republic Credit by the FDIC in August of 1999. Defendant's voir dire also lists Chuck Singleton as a potential witness, who the Government understands is an employee of Republic Credit.

**CERTIFICATION OF SERVICE**

     I hereby certify that a copy of the above and foregoing has been telefaxed and mailed, postage prepaid, on this 11th day of March, 2005 to:

Stanley A. Twardy Jr., Esq.  (facsimile 203-977-7301)
Day, Berry & Howard, LLP
One Canterbury Green
Stamford, CT 06901

                         By:  _____
                                 DAVID J. SHELDON
                                 ASSISTANT UNITED STATES ATTORNEY
                                 FEDERAL BAR NO. ct07997

                        For:  THOMAS V. DAILY
                                 ASSISTANT UNITED STATES ATTORNEY
                                 FEDERAL BAR NO. ct03467
                                 450 Main Street, Room 328
                                 Hartford, CT 06103
                                 (860) 947-1101